The STATE of Ohio, Appellee

v.

WILLOUGHBY, Appellant.

[Cite as *State v. Willoughby* (1992), 81 Ohio App.3d 562.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–033.

Decided June 30, 1992.

*Anthony G. Pizza*, Prosecuting Attorney, and *Mary Sue Barone*, Assistant Prosecuting Attorney, for appellee.

*John F. Potts*, for appellant.

**Per Curiam.**

This case is on appeal from the November 8, 1989 judgment of the Lucas County Court of Common Pleas, which sentenced appellant, Deric Willoughby, following his conviction for drug abuse in violation of R.C. 2925.11.

Appellant was indicted on three counts on August 2, 1989. Appellant filed three motions to suppress various evidence and statements made by him. An evidentiary hearing was held regarding these motions. Following the hearing, the motions were taken under advisement and a trial date was scheduled for October 30, 1989. At a pretrial conference on October 27, 1989, a ruling was made on these motions. Appellant then entered a no contest plea to an amended count (drug abuse) and a *nolle prosequi* was entered as to the remaining two counts. Appellant was immediately sentenced. Appellant seeks an appeal from the trial court's ruling on these motions to suppress. On appeal, appellant asserts the following assignments of error:

*"Assignment of Error I*

"It constituted error to deny appellant's motion to suppress the physical evidence seized during the warrantless search of appellant's house."

*"Assignment of Error II*

"It constituted error to deny the appellant's motion to suppress the statements elicited from him by Detective Navarre."

*"Assignment of Error III*

"It constituted error to deny appellant's motion to suppress the evidence seized during the search of his safe."

The trial transcript reveals the following series of events which occurred on July 21, 1989. Several officers testified that the police received reports of a woman who had been stabbed and was running through a neighborhood naked and bleeding. Several crews responded to the call, as well as the fire department. Neighbors told the police that the woman came from and went back into a duplex at 3129 Scottwood. The police followed a trail of blood to that address.

When a police officer first knocked at the door, a woman came out, closing the door behind her. She told the police that the people they were looking for were inside. The police officer knocked at the door again, and appellant asked what they wanted. The officer responded that they had a report of an injured woman in the neighborhood and believed that she was inside his home. Appellant responded that the police were not needed. The officer knocked on the door and appellant came to the door again. The officer stated that they wanted to check on the woman's condition. Appellant stated that the victim was in the bathroom and did not want to talk to the police. The officer again demanded to be allowed in. Appellant said that the police could see the victim outside.

Some of the officers could see the victim standing behind appellant and saw that she had a cut across the bridge of her nose which was bleeding steadily, that her face looked like it had been beaten, and that her hair was wet.

The officers stated that they were coming in because they needed to check for more victims and that there was no way that they would leave before doing so. Appellant responded by pointing either to one or three officers and saying that he or they could come in. All of the officers went in immediately.

The first officer to enter the premises spoke to the injured woman, but she did not respond. He believed that she was in shock. He could see blood throughout the duplex as well as broom handles with blood on them, duct tape, and rope. The officer who helped the injured woman testified that she had said she had fallen through a window. Appellant told one of the officers the same story. The officers observed a broken window in the home, but did not believe this story because there was no blood near the window nor were there cuts on the woman other than on her face. The police found that the shower was wet and contained a small amount of blood and duct tape.

The woman was immediately removed to the porch where the fire department personnel examined her. Appellant was detained in the kitchen while

the police investigated the "crime scene." A few minutes later, appellant attempted to go into another room, and an officer tried to restrain appellant. Appellant resisted and a short struggle occurred. The arresting officer testified that appellant was then arrested for misconduct at an emergency and either resisting or obstruction of official business.

While the other officers were looking for a knife and other victims, they followed the bloodstains into the other rooms of the home, all of which were open. During their search for other victims, they observed cracked mirrors with a white powdery substance on them, razors, and small baggies which they believed were indications of drug use. They found a welfare check issued to a person other than appellant and a receipt for the duct tape, broom handles and rope. They also observed that there were five televisions and two VCRs in the home, some of which had Rent-A-Center tags on them. The officer saw a safe sticking out of the door frame of an open closet in the bedroom.

Appellant was questioned about the number of televisions and VCRs and he said that he got them from friends. He also stated that the safe was his, but he did not know the combination. The questioning officer did not give appellant his *Miranda* warnings because he was not under arrest for possession of stolen property—the officer only suspected that the property was stolen at that time.

All the televisions and VCRs were placed so that the officers could see the serial numbers without moving the items. Two of the televisions did not contain serial numbers. One officer called in the serial numbers and found that one of the televisions or the VCRs was reported stolen.

Because one of the items came back reported as stolen, the officers concluded that they had probable cause to believe that the rest of these items were stolen also.

The police seized all of the televisions and VCRs, some stereo equipment, a phone, broom handles, duct tape, drug paraphernalia, and the receipt for the duct tape, broom handles, and rope.

The police also seized the safe. A detective at the scene was familiar with this address and appellant. That detective had previously been told by a confidential informant that appellant sold drugs from this address and that appellant had a safe. This information was confirmed by several drug buys by undercover police officers three to four months prior to July 21, 1989. In addition, the detective had information about two-weeks old that appellant was still selling drugs from that address. Therefore, the detective was currently investigating appellant. When the detective saw the drug paraphernalia, he

ordered that the safe be seized until a search warrant could be obtained to open it.

The owner of one of the VCRs seized testified that it was his VCR which he purchased from Rent–A–Center on a rent-to-own plan. His mother had reported the VCR stolen a couple of months prior to trial, which could have been near the time of appellant's arrest.

A warrant search of the safe revealed that it contained cocaine, two hand guns, appellant's I.D., and cash.

Appellant sought to suppress the evidence obtained from his safe and from his apartment on the ground that the search of the apartment was illegal. In addition, he sought to suppress his statements on the ground that he did not make a valid, intelligent, and knowing waiver of his constitutional rights. Appellant did not specifically identify the statements he sought to suppress, but indicated that they were made during the search of the apartment and when he was later questioned by the detective. The motions to suppress the physical evidence were denied by the trial court. The motion to suppress appellant's statements was granted.

In his first assignment of error, appellant argues that the trial court erred when it denied his motion to suppress the evidence seized during the search of his home. He argues that none of the exceptions to the Fourth Amendment search warrant requirement applied in this case. He argues that if the police needed to secure the "crime scene," they needed to obtain a search warrant.

He also argues that the seizure of his safe and other property was illegal and that the plain-view doctrine is not applicable in this case to justify a warrantless seizure of this property. His argument is based upon a belief that the incriminating or unlawful nature of the items was not immediately apparent to the officers conducting the search.

The state argues that the warrantless search and seizure in this case were justified by the exigent circumstances (the need to search for the victim) and the plain view doctrine.

Warrantless searches and seizures are deemed unreasonable except in a few well-established situations. *Horton v. California* (1990), 496 U.S. 128, 134, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112, 120, at fn. 4, citing *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585.

■ The United States Supreme Court has recognized an emergency exception to the Fourth Amendment search-warrant requirement. This exception applies when there is a reasonable basis for the police to believe that someone inside the premises needs immediate aid. *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290, and *Parma v. Jackson* (1989), 58 Ohio

App.3d 17, 568 N.E.2d 702. However, this exception strictly limits the extent of the search of the premises. The search must be no broader than necessary to resolve the emergency situation. *Id.* and *United States v. Moss* (C.A.4, 1992), 963 F.2d 673.

The plain-view doctrine has also sometimes been viewed as an exception to the warrant requirement and sometimes as an "extension of whatever the prior justification for an officer's 'access to an object' may be." *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502. See, also, *Horton v. California, supra,* 496 U.S. at 133–134, 110 S.Ct. at 2306, 110 L.Ed.2d at 120–121.

■ There are three requirements to the application of the plain-view doctrine to a warrantless seizure of a defendant's property. First, the police must not violate the Fourth Amendment by placing themselves in a position where the seized article was in plain view (the police must be legitimately within the plain view of the article to be seized). Second, the incriminating nature of the article must have been immediately apparent to the officers. Third, the police must have a lawful right of access to the article. *Id.,* 496 U.S. at 136–137, 110 S.Ct. at 2308, 110 L.Ed.2d at 123. The additional requirement of inadvertent discovery of the article originally required by *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, was specifically rejected by the *Horton* court.[1]

■ With regard to the second requirement of the plain-view doctrine, the police need to have probable cause, with some narrow exceptions, to immediately believe upon discovery of the article in plain view that it is obviously incriminating evidence or contraband. *Arizona v. Hicks* (1987), 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 354. Probable cause is considered to be a "flexible, common-sense standard." *Texas v. Brown, supra,* 460 U.S. at 742, 103 S.Ct. at 1543, 75 L.Ed.2d at 514. Therefore, the police may utilize their special knowledge or experience to justify their belief that probable cause existed. *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66

---

**1.** The Ohio Supreme Court first adopted the *Coolidge v. New Hampshire* requirements in *State v. Williams* (1978), 55 Ohio St.2d 82, 9 O.O.3d 81, 377 N.E.2d 1013, paragraph one of the syllabus. The *Williams* case and *State v. Wilmoth* (1982), 1 Ohio St.3d 118, 1 OBR 157, 438 N.E.2d 105, were modified by *State v. Halczyszak, infra,* 25 Ohio St.3d at 307, 25 OBR at 365, 496 N.E.2d at 933, to eliminate the holding that the police may not utilize their special knowledge, training, and experience to support their probable cause belief that the article to be seized is immediately apparent as incriminating evidence or contraband. The court also applied the *Coolidge* requirement in *State v. Sage* (1987), 31 Ohio St.3d 173, 185, 31 OBR 375, 385, 510 N.E.2d 343, 352, and *State v. Benner* (1988), 40 Ohio St.3d 301, 307–308, 533 N.E.2d 701, 708–709. The Ohio Supreme Court has not yet determined if it will adopt the revised three-part analysis of *Horton v. California, supra,* but we presume that it will.

L.Ed.2d 621; *Texas v. Brown, supra,* 460 U.S. at 741–743, 103 S.Ct. at 1542–1543, 75 L.Ed.2d at 513–515; and *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925, at paragraph four of the syllabus.

The Sixth Circuit has repeatedly held that the second requirement of the plain-view doctrine demands that the incriminating nature of the article to be seized be instantaneously perceived. In *Donta v. Hooper* (C.A.6, 1985), 774 F.2d 716, the police conducted a warrant search of Donta's farm after a man died of asphyxiation due to the rapid drinking of alcohol. The police were searching for a moonshine still or illegal alcohol. What the police found, however, was a large quantity of marijuana and fifty firearms. The police checked seven serial numbers and four of the first five were reported as stolen. The police seized all of the guns. That evening, all of the guns were checked, but no more were found to be stolen. Donta brought suit under Section 1983, Title 42, U.S.Code, alleging that he was subjected to an illegal search, seizure, and arrest. The appellate court held that the police did not have reason to seize the guns under the plain-view doctrine because there was no reasonable basis for the officers to believe that the guns were illegally possessed.

In *United States v. McLernon* (C.A.6, 1984), 746 F.2d 1098, the police seized a note pad and calendar. The police were investigating a woman's involvement in a drug sale. While in her hotel room, the police observed the note pad and calendar and seized them. The woman was not arrested at that time because there was no probable cause to connect her to the drug deal. However, upon examination of the note pad and calendar, the woman's association with the drug deal was discovered, and she was later arrested. The court of appeals held that the incriminating nature of the note pad and calendar was not immediately apparent to the police upon their plain view of the objects. Since these objects were intrinsically innocent items, the court held that the warrantless seizure was improper.

In *United States v. Szymkowiak* (C.A.6, 1984), 727 F.2d 95, the police conducted a warrant search of Szymkowiak's home for certain jewelry and a television. These items were not found, but the police seized two weapons not listed in the warrant nor anticipated to be found. The officers could not determine whether possession of these types of guns was illegal. They knew that their possession did not violate any federal law, but believed that their possession might have violated Ohio law. To determine if the guns were illegally possessed, the police needed to disassemble the guns. Szymkowiak moved to suppress one gun claiming that it was seized illegally. The court of appeals held that the illegality of the guns was not immediately apparent upon plain view of them. The court concluded that the officers could not reason-

ably have derived probable cause to believe that the guns were incriminating evidence or contraband. The court held that the specialized training and experience of the police may be considered in connection with the determination of probable cause. However, the court required that both the immediate and apparent elements exist to establish probable cause.

All of the above-mentioned Sixth Circuit cases were distinguished from *United States v. Truitt* (C.A.6, 1975), 521 F.2d 1174. The *Truitt* case involved the seizure of a sawed-off shotgun. The *Truitt* case was distinguished on the basis that the possession of a sawed-off shotgun is rarely lawful and, therefore, the police would have a reasonable basis for believing that the sawed-off shotgun was illegally possessed.

We previously dealt with this issue in *State v. Strzesynski* (Apr. 18, 1986), Wood App. No. WD–85–68, unreported, 1986 WL 4660. In the *Strzesynski* case, the police conducted a warrant search of the defendant's home to search for property stolen from a manufacturing company. Two employees of the company accompanied the police to identify the stolen items, some of which were specifically identified in the search warrant. The police sought to justify the seizure of items not particularly described in the warrant under the plain-view doctrine. We held that the items seized were not inadvertently discovered or apparent as incriminating evidence or contraband. The police admitted that they could not readily identify the stolen items.

The Supreme Court of Ohio also dealt with the "immediate apparent" requirement of the plain-view doctrine in *State v. Halczyszak*. In the *Halczyszak* case, the police conducted a warrant search of an auto-body repair shop seeking to find a particular stolen automobile. While on the premises, the police observed other automobiles in various stages of assembly. The police checked the VINs on some of these autos. One automobile was immediately verified as stolen. The officers seized the automobiles and parts which were either confirmed as stolen or believed to be stolen and those used as change-over vehicles and parts. The police also seized tools and other equipment utilized in the "chop shop."

The Supreme Court acknowledged that a probable-cause standard should be applied to determine whether the illegal nature of the seized object is immediately apparent. The court held that although the automobiles and parts are "innocent" items, the circumstances under which they were discovered (in premises which appeared to be an illegal chop shop) made their illegal nature immediately apparent to the police. In addition, the court held that the police could make a computer check of an automobile's VIN to determine whether or not the automobile was stolen. However, the court held that the police improperly seized automobile parts which lacked identifying numbers,

even though such parts do not normally contain identifying numbers. The court reasoned that the mere presence of such parts in a chop shop was not enough by itself to justify their seizure since they could be legitimately possessed. The court did hold, however, that those tools which were found nearby stolen and stripped-out vehicles could be seized because there is a high probability that they were involved in the chop-shop process.

We now turn to the application of the law to the facts and the case before us. The police came to appellant's home in response to an emergency call. Although the report indicated that there was a single person who was injured, the police had no way of knowing who that person was. The police did know that the injured woman came out of and went back into appellant's home. Therefore, it was necessary for the police to enter appellant's home to ensure that the woman seen standing behind appellant was the victim indicated in the report. This reason alone gave them justification to search the home for the victim. In addition, the police observed blood splattered about the apartment. This also gave them reason to suspect that there might be more than one victim. The search was no more extensive than necessary to determine if there were any other persons in the home. Therefore, we conclude that the warrantless entry and search of appellant's home was permissible under the Fourth Amendment.

Next, we must determine whether or not the seizure of appellant's property was proper under the plain-view doctrine. First, we have already found that the police were properly on the premises and within plain view of the articles seized. Second, appellant does not argue that the police did not have a lawful right of access to the items seized. The only issue in dispute in this case is whether the police had probable cause to believe that upon immediate discovery of the items in plain view their incriminating nature was apparent. With regard to the broom handles, duct tape, rope, and the receipts for these items, the police did have probable cause to believe that these items were involved in the injury of the woman because of their proximity to the splattered blood and because some had blood on them. In addition, we find that the police had probable cause to believe that the cracked mirrors with a white, powdery substance on them, razors, and small baggies were drug paraphernalia based upon their experience as police officers. With regard to the safe, we find that the police also had probable cause to believe that it was connected with illegal activity of selling drugs because of the detective's investigations. This special knowledge of the police was sufficient to give rise to the probable-cause belief that the otherwise "innocent looking" safe was being used for illegal purposes.

■ With regard to the televisions and VCRs, we are satisfied that, based upon the totality of the circumstances that the police, utilizing a common-sense standard, did utilize their experience and knowledge to determine that these items were probably stolen. Their seizure of the articles was, therefore, appropriate.

Wherefore, we find appellant's first assignment of error not well taken.

In his second assignment of error, appellant argues that the trial court erred when it denied his motion to suppress the statements elicited from him by the detective.

Since the trial court granted appellant's motion to suppress these statements, we find this assignment of error moot.

In his third assignment of error, appellant argues that the trial court erred by denying his motion to suppress the evidence seized during the search of his safe. Appellant's argument is premised on the belief that the initial seizure of the safe was illegal. On that basis, he argues that a subsequent search warrant to open the safe would also be invalid.

Having found that the seizure of the safe was not a violation of the Fourth Amendment, appellant's argument is without merit. Therefore, we find appellant's third assignment of error not well taken.

Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER and SHERCK, JJ., concur.