OPINION
On January 2, 2001, Defendant-Appellant Reena L. White pled no contest to the charge of possession of cocaine and was found guilty by the trial court. White was sentenced to a mandatory term of two years. The plea followed a decision by the trial court overruling White's motion to suppress. That decision forms the basis of her appeal, which is reflected in her sole assignment of error:
 The trial court erred in overruling appellant's motion to suppress evidence and statements.
Evidence presented at the motion to suppress hearing established the following facts:
 During October and November of 1999, the City of Dayton Police Department was conducting surveillance of three businesses on Edwin C. Moses Boulevard, BP gas station, McDonalds, and Econo Lodge, in response to complaints of drug activity at those businesses. The officers were positioned in a parking lot across the street in an unmarked car. This surveillance had so far resulted in ten drug arrests at that location.
At approximately 10:30 p.m. on November 5, 1999, Officers Orndorff and Gaier witnessed a male and female in a brown Lincoln Continental pull into the parking lot of the Econo Lodge and back into a parking space. Both individuals remained in the car for approximately five minutes when another man and woman exited the motel. The woman coming from the motel continued to the Lincoln and entered the back passenger seat, while the man who had come out remained at the corner of the motel, looking up and down the street.
After a few minutes, the same woman exited the back passenger seat of the Lincoln, rejoined the man, and the two went back into the motel. Immediately thereafter, the two individuals in the Lincoln Continental drove away. Officers Orndorff and Gaier alerted officers in a nearby marked police cruiser to initiate a stop of the vehicle under suspicion of drug activity.
Soon after the Lincoln turned onto Edwin C. Moses, Officers Phillips and House in the marked cruiser initiated a stop. After the Lincoln had stopped, Officer Phillips noticed White, the passenger, move her head and shoulders up and down, and the driver look back in the rear view mirror several times as the officers approached. As Officer Phillips neared the passenger door, White was looking toward the driver side of the vehicle, and Phillips smelled a strong marijuana odor emanating from the car. When he got closer, Officer Phillips witnessed White put her right hand down the front of her pants. Upon seeing her hand disappear into her pants, the officer pecked on her window twice, trying to get her attention to tell her to exit the vehicle. White turned her head toward the officer and took her hand out of her pants. Officer Phillips advised her to open the door, which was locked, and exit the vehicle. Eventually, she complied.
When White exited the vehicle, she brought her open purse with her. Officer Phillips had control of her right hand, and Officer Braun had approached to assist, taking her left hand. At this point, Officer Phillips asked White what she shoved down the front of her pants. White responded that "she did not shove anything down the front of her pants, that it was marijuana and that she had put it in her purse." Officer Braun then took control of her purse and placed it on the vehicle while he continued to assist Officer Phillips in his pat-down of White. Due to White's gender, Officer Phillips called for a female officer to pat-down the front area of her pants where she had shoved her hand. The officers handcuffed White to secure their safety while awaiting the female officer.
At some point during the stop, Officer Larremore approached the area and shined his flashlight into White's open purse on the hood of the car. With only the help of his flashlight, he discovered two baggies, one containing crack cocaine and the other containing pills. At this time, White was placed under arrest and read her Miranda warnings. Thereafter, a female officer arrived and conducted a search of the front of White's pants, finding more crack cocaine that had been placed inside.
Terry Stop
White challenges that virtually each step in the process, from the initial stop to her arrest, violated her constitutional rights. First, she argues that the officers did not have a valid reason to initially stop the vehicle. In order to conduct an investigative stop of a vehicle, the police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 1880. The Ohio Supreme Court has found that "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances."State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. These circumstances must be considered "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86,87-88. For this reason, the court must take into consideration the officer's experience and training and understand how the situation would have been viewed by the officer on the street. Id. at 88.
White specifically argues that the stop was not justified because all of the activity witnessed by the officers was consistent with innocent activity and the officers did not witness any drugs or money exchanging hands. However, the Supreme Court has held that, while a series of events appear innocent when viewed separately, taken together, they can warrant further investigation. United States v. Sokolow (1989), 490 U.S. 1,9-10, 109 S.Ct. 1581, 1587. A reasonable and articulable suspicion to stop for further investigation requires something less than probable cause. Terry, supra at 22, 88 S.Ct. at 1880.
In Bobo, the court found reasonable suspicion to stop where the events had occurred in a location of high drug activity, they had occurred at night, the officers were experienced with drug transactions and had prior drug arrests in that area, and the defendant had made furtive movements.Bobo, supra, at 179. See, also, State v. Harrington (July 26, 1999), Stark App. No. 1998CA00300, unreported (finding reasonable suspicion when the defendant walked into a suspected crack house at 2:00 A.M. and exited two to three minutes later, and the car that dropped him off was parked down the street with its lights and engine off); Akron v. Dotson (Dec. 9, 1998), Summit App. No. 19053, unreported, at pp. 5-6 (finding reasonable suspicion where the defendant was seated in a stopped car in the middle of the road in a high drug activity area, engaged in conversation with a man leaning in the window, and both left when officers approached); State v. Grimes (Nov. 1, 1996), Montgomery App. No. 15756, unreported, at p. 4 (finding reasonable suspicion where a vehicle pulled up to an apartment in the middle of night, one of two occupants entered the building and returned two to three minutes later).
In the present case, Officers Orndorff and Gaier had been conducting surveillance of the three businesses on Edwin C. Moses due to citizen complaints of drug activity, including a complaint from the security officer at BP. Officer Orndorff had had over six years of experience with drug transactions and had made over one thousand drug arrests. During the month prior to November 5, 1999, ten drug arrests had been made as a result of the surveillance in this area of Edwin C. Moses. All of the arrests involved activity at one of the three businesses, which closely resembled the events involved in this case.
White and the driver of the vehicle pulled into the Econo Lodge parking lot and did not exit their vehicle. They waited five minutes until two individuals came out of the motel. The female who exited the motel entered the vehicle, while the man stood at the corner of the building looking up and down the street. Within a few minutes, the same two individuals went back into the motel. White and her companion drove off. White and her companion never exited the vehicle, and the man that came out of the motel never entered or even approached the vehicle. The most logical reason for him to be outside at that time is that he was to act as a "lookout" for the other individuals. We find that based on Officer Orndorff's experience, he could recognize a series of events that would likely constitute a drug transaction. In viewing the totality of the circumstances, we find that the officers in this case had reasonable and articulable suspicion to stop the vehicle engaged in such activity.
Terry Frisk
Next, White argues that the frisk conducted by the officers was not warranted. Terry provided that during an investigative stop, a police officer may conduct a pat-down of the individual's outer clothing for weapons if the officer had a reasonable suspicion that the suspect is armed. Terry, supra at 24, 88 S.Ct. at 1881. The Ohio Supreme Court has expanded this standard by holding "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." State v. Evans
(1993), 67 Ohio St.3d 405, 413.
The officers in this case had stopped the Lincoln based on a reasonable suspicion that the occupants had just engaged in a drug transaction. Pursuant to Evans, this fact alone would justify the officers' pat-down of White. However, after the vehicle was stopped, the officers also witnessed White move her head and shoulders up and down and shove her right hand down her pants. These movements provided more justification for the officers to secure their own safety by conducting a pat-down for weapons. We find this pat-down was valid.
As part of this argument, White contends that the pat-down ended when Officer Phillips completed patting down all areas except the front of her pants where she had shoved her hand. As a result, she argues that detaining her while awaiting a female officer was a violation of her Fourth Amendment rights. We disagree.
Officer Phillips testified that a female officer was called initially to pat-down the front area of White's pants to verify that she had no weapons. Based on White's action of shoving her hand down the front of her pants, combined with the suspected drug activity, the officers had a reasonable suspicion that White could have a weapon in that location. Officer Phillips testified that it was their policy to call a female officer to conduct a pat-down in sensitive areas of a female suspect. Testimony indicated that Officer Florio, the female officer, arrived within just a few minutes of the stop. This minor detention in order to secure the officers' safety was not an infringement of White's Fourth Amendment rights. Consequently, the contraband found in White's purse while she was awaiting the female officer was not suppressible as fruit of a poisonous tree. See, Wong Sun v. United States (1963), 371 U.S. 471,484, 83 S.Ct. 407, 416.
Miranda Warnings
White further argues that the officers performed a custodial interrogation prior to advising her of her Miranda rights. After reviewing the evidence, it appears the only questions asked of White prior to Miranda warnings were what she stuffed down her pants and whether she had any weapons in her purse. Both of these questions were asked as she was exiting the vehicle.
The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612. There is no question in this case that the officers asked White the questions stated above, which constituted interrogation. The only issue before us is whether she was in custody at the time. A suspect is in custody for purposes of Miranda when "there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler (1983), 463 U.S. 1121, 1125,103 S.Ct. 3517, quoting Oregon v. Mathiason (1977), 429 U.S. 492, 495,97 S.Ct. 711, 714. The test to determine whether there is a sufficient restraint on freedom of movement is whether a reasonable person in the suspect's situation would understand that he was in a custodial situation.Berkemer v. McCarty (1984), 468 U.S. 420, 422, 104 S.Ct. 3138, 3141. TheBerkemer Court further found that persons detained pursuant to Terry
stops are not "in custody" for Miranda purposes. Id. at 440,104 S.Ct. at 3150.
At the time White was asked those questions, she was still only involved in a Terry investigation. The officers had properly asked her to exit the vehicle pursuant to Pennsylvania v. Mimms (1977), 434 U.S. 106,111, 98 S.Ct. 330, 333 and its progeny in order to ensure their safety and to investigate their suspicion that a drug transaction had just occurred. Officer Phillips testified that White was not handcuffed at the time he asked her what she stuffed down her pants, nor when Officer Braun asked if there were any weapons in her purse. We agree with the trial court that White was not in custody at that time. Any further questioning of White would have occurred after she was placed under arrest and advised of her Miranda warnings. Therefore, we agree that none of White's statements should have been suppressed.
Plain View
When White exited the vehicle, she brought her open purse outside the vehicle with her. In order to secure their safety, the officers removed the purse from her hand and placed it on the vehicle. While White was being frisked, another officer shined his flashlight into the open purse, discovering two baggies containing crack cocaine and pills. White argues this was an illegal search. Again, we disagree.
The State argues that the baggies containing the contraband were in plain view, which is a recognized exception to the Fourth Amendment warrant requirement. State v. Waddy (1992), 63 Ohio St.3d 424, 442. The elements necessary to satisfy the plain view doctrine include: (1) that law enforcement officers were lawfully in a position to observe the items, and (2) the incriminating nature of the item must be immediately apparent. State v. Reaves (Nov. 3, 2000), Montgomery App. No. 18302, unreported, at p. 2, siting Waddy, supra. The requirement that the item's incriminating nature must be immediately apparent should be examined under a probable cause standard. State v. Strothers (Dec. 22, 2000), Montgomery App. No. 18322, unreported, at p. 2, citing State v.Willoughby (1992), 81 Ohio App.3d 562, 569. The Willoughby court described probable cause as a common sense standard for which "the police may utilize their special knowledge or experience to justify their belief that probable cause existed." Willoughby, supra, at 568, citing UnitedStates v. Cortez (1981), 449 U.S. 411, 101 S.Ct. 690.
We have already established that the stop of the vehicle in which White was a passenger was a valid Terry stop. The officers were permitted to order White out of the vehicle pursuant to Mimms and State v. Watson
(Aug. 23, 1996), Montgomery App. No. 15449, unreported, at p. 3 (extending the Mimms holding to passengers) and to pat her down according to Terry. White chose to bring her open purse outside the vehicle with her. Officer Larremore was lawfully near the car during the Terry stop when he shined his flashlight into the purse. This brings us to White's additional argument concerning this issue, that shining a flashlight in her purse constituted an illegal search, not a plain view discovery of the contraband.
Several courts have found that the use of a flashlight by a police officer in dark situations does not by itself elevate an officer's actions to a search. See, e.g., Reaves, supra, at p. 3 (finding that shining a flashlight into a vehicle allowing the officer to recognize the butt end of a gun sticking out from under the seat does not constitute a "search" which triggers Fourth Amendment protections); Strothers, supra, at p. 3 (holding that use of flashlight to look into pocket where baggie was protruding was insignificant); State v. Ward (Nov. 16, 1994), Montgomery App. No. CA 14186, unreported, at p. 2 (holding that use of flashlight to look into a car finding a weapon did not constitute a search). "The use of a flashlight by a police officer does not negate the fact that an item is otherwise in plain view or that its discovery is inadvertent." Id., citing State v. Kirk (Jan. 26, 1984), Montgomery App. No. 8249, unreported. See, also, Texas v. Brown (1983), 460 U.S. 730,740, 103 S.Ct. 1535, 1542.
Officer Larremore testified that he recognized "it" by simply looking in the purse, then used his flashlight "for clarity." While "it" was not directly explained, earlier testimony revealed that Officer Larremore first saw the baggies, then the contents. We could logically deduce from this that the baggies were visible even without the aid of the flashlight. The Supreme Court has held that in situations involving potential drug activity that the sight of a container that the officer knows frequently contains drugs is sufficient to find probable cause that the item's incriminating nature is readily apparent. Brown, supra, at 742-43, 103 S.Ct. at 1543 (finding that a balloon in plain view provided probable cause that cocaine was present because the officer knew from experience cocaine was transported in balloons). Regardless, Officer Larremore's use of the flashlight revealed the actual crack cocaine contained in the baggie, so in this case the actual contraband was in plain view. Officer Larremore testified that he did not touch or manipulate the purse in any way in order to discover the contraband.
Furthermore, before Officer Larremore shined his flashlight into the purse, Officer Phillips had smelled marijuana and White had told the officers that she had marijuana in her purse. Therefore, even if the purse had not been open and the items in plain view, the officers would likely have had probable cause to search the purse at that time. However, we need not explore that probable cause analysis here because we find the contraband in the baggies was in plain view, and properly seized by the police officers.
Handcuffs
Testimony regarding when and why White was handcuffed during this incident is a bit confusing. Both Officers Braun and Phillips testified that, once White was frisked in all areas except the front of her pants, she was handcuffed for security while awaiting a female officer to complete the pat-down. The officers both felt this was necessary to secure their safety since Officer Phillips had seen her hand go down the front of her pants and due to department policy, they were unable to frisk that area to determine if she had hidden a weapon there. Officer Braun testified that, although she was not free to go at the point when she was handcuffed, she was not under arrest. Whereas, Officer Phillips responded to a question on cross examination that White was not handcuffed, arrested and mirandized until after the crack cocaine was discovered in her purse.
White seems to argue that, at the moment she was handcuffed, she was under arrest and the officers had no probable cause at that time to arrest her. Therefore, she contends that the crack cocaine discovered in her purse and her pants are suppressible as fruit of the poisonous tree. While there are certain exceptions[1], we agree with White that generally when an individual is placed in handcuffs, the situation has elevated beyond an average Terry stop. As a result, we find that placing her in handcuffs at that moment may well have been a violation of her Fourth Amendment rights. Nonetheless, because no evidence was seized as a result of the handcuffing, no evidence should have been suppressed.
Although a specific time frame was never fully developed at the suppression hearing, it appears from the testimony that all of the events in this case occurred over a very brief period of time. While Officers Braun and Phillips testified that the reason they handcuffed White was to detain her while awaiting a female officer, Officer Phillips also stated that she was not handcuffed until after the crack was discovered in her purse. Officer Larremore testified that he discovered the crack in White's purse in open view while Officers Braun and Phillips were "dealing with the defendant." It is clear to this court that the crack cocaine in White's purse would have been discovered by Officer Larremore regardless of whether Officer Phillips had handcuffed her.
"The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." Nix v. Williams (1984), 467 U.S. 431, 444 104 S.Ct. 2501,2509. This doctrine differs slightly from the inevitable discovery doctrine, which allows admission of evidence discovered as a result of a constitutional violation that could have been discovered through lawful means. The crack cocaine in plain view in White's purse was not discovered as a result of White being handcuffed. Her handcuffing did not "result" in the discovery of any evidence. Therefore, while we do not find any specific basis in the law for the officers to have handcuffed White at that time, we also do not find that it resulted in any suppressible evidence. The crack in White's purse was discovered wholly independent of the handcuffing.
Search Incident
Finally, White indirectly challenges the search incident to arrest which yielded more crack cocaine. White essentially argues that a female officer was called to conduct this search before there was probable cause to arrest her. On the contrary, we find that, at the time the female officer was called, the officers on the scene simply intended for her to complete the Terry frisk of the front of her pants. In the time period between the call and the female officer's arrival, crack cocaine had been discovered in White's purse, and she had been placed under arrest. Therefore, when Officer Florio arrived, she conducted a full search incident to arrest instead of just a Terry frisk.
We have already established that White's arrest was lawful. A valid search incident to a lawful arrest must be limited to the arrestee's person and the area within her immediate control. Chimel v. California
(1969), 395 U.S. 752, 763, 89 S.Ct. 2034, 2040. Such a search is not limited to the discovery of weapons but may also include other evidence as well. State v. Jones (1996), 112 Ohio App.3d 206, 215, citing UnitedStates v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467. The crack cocaine was found down the front of White's pants and therefore was part of her person. We find this search and seizure to be valid.
Based on the foregoing, White's sole assignment of error is overruled. Judgment affirmed.
FAIN, J., and GRADY, J., concur.
[1] Force may be used, even in the form of handcuffs, during a Terry
stop if it is reasonably necessary and is limited in scope and duration.State v. Bradley (Mar. 11, 1993), Franklin App. No. 92AP-1496, unreported, at p. 2. Handcuffing generally only occurs during a Terry
stop if the individual is dangerous or resisting the officers and it is necessary to complete the frisk. Id. While we understand the officers found it necessary to detain her for their protection while awaiting the female officer to complete the frisk, we do not believe White was an especially dangerous suspect, nor had she resisted the officers.