DECISION.
{¶ 1} Defendant-appellant, Marc A. Upton, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of one count of aggravated trafficking in oxycodone under 2925.03(A)(2), a felony of the second degree; one count of aggravated possession of oxycodone under R.C. 2925.11(A), a felony of the second degree; one count of aggravated possession of psilocyn (hallucinogenic mushrooms) under R.C. 2925.11(A), a felony of the third degree; one count of trafficking in marijuana under R.C. 2925.03(A)(2), a felony of the third degree; one count of possession of marijuana in violation of R.C. 2925.11(A), a felony of the third degree; one count of aggravated possession of methamphetamine under R.C. 2925.11(A), a felony of the fifth degree; and one count of possession of cocaine in violation of 2925.11(A), a felony of the fifth degree. He was convicted of the offenses after a jury trial.
 Search and Seizure {¶ 2} Late one night, police officers responded to a house after a report of a shooting. When they arrived, Upton was in the front yard bleeding profusely from what appeared to be a serious gunshot wound. He was agitated and unable to coherently inform the officers what had led to his injuries or who had inflicted the wound.
 {¶ 3} Soon after, Thomas Biddle emerged from the house. Biddle had a gunshot wound to his leg. He was agitated and belligerent, and he repeatedly demanded medical attention. At some point, he stated that several assailants had left the scene of the shooting.
 {¶ 4} The officers administered to Upton and Biddle until emergency medical help arrived. When their supervisor got to the scene, the officers were ordered to enter the residence to look for perpetrators or other injured persons.
 {¶ 5} Among the items the officers found when they went through the residence were two firearms, a number of marijuana pipes, a substance that appeared to be cocaine, a money-counting machine, and several slips of paper that appeared to indicate sums of money that various individuals owed. The officers testified that all of these items were in plain view.
 {¶ 6} Based upon the items found in the initial entry into the house, the officers secured a search warrant. When the warrant was executed, the officers recovered cocaine, a large quantity of marijuana, approximately seventy doses of oxycodone, individual doses of psilocyn, a large number of plastic baggies, a digital scale, and approximately $17,000 dollars in cash. The officers also found personal papers and identification cards indicating that Upton had resided in the house.
 {¶ 7} Upton filed a motion to suppress the evidence seized from the house. He argued that the officers' initial warrantless entry was improper and that all evidence seized as the result of that entry was subject to suppression. The trial court denied the motion.
 {¶ 8} At trial, the officers testified that they had questioned Upton at the hospital. According to the officers, Upton stated that he had resided in the house and that Biddle periodically stayed there. The officers also stated that all clothing found in the residence seemed to fit Upton and not Biddle, who was a much smaller man. The officers found no other evidence indicating that Biddle had resided in the house or had stayed there for any lengthy period of time.
 {¶ 9} The defense rested without presenting any evidence. The jury found Upton guilty, and the trial court sentenced him to seven concurrent prison terms, for a total of seven years' incarceration.
 Motion to Suppress {¶ 10} In his first assignment of error, Upton now argues that the trial court erred in denying his motion to suppress the evidence seized from the residence. He again argues that the officers' warrantless entry violated his rights under theFourth Amendment to the United States Constitution.
 {¶ 11} When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to evaluate the credibility of witnesses and to weigh the evidence.[1]
Although we must accept the trial court's findings of fact if they are supported by some competent, credible evidence, we conduct a de novo review of whether the facts meet the applicable legal standard.[2]
 {¶ 12} Warrantless searches are unreasonable under theFourth Amendment except in several well-defined situations.[3] And while there is no general "emergency exception" to the warrant requirement,[4] certain exigent circumstances permit officers to enter a residence without a warrant. Exigent circumstances exist when "there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant."[5] Among such circumstances are the risk of undetected escape by a suspect within a residence and a threat of harm posed by the suspect to either himself, the public, or the police.[6]
 {¶ 13} In this case, the officers certainly had reason to believe a suspect may have been in the house and that he posed a risk of harm to others. Upton was in the front yard of the residence profusely bleeding from what turned out to be a grave gunshot wound. Biddle emerged soon after and also appeared to have been recently shot. The situation reasonably caused the officers to believe that it was necessary to enter the house to protect their own safety and the safety of others.
 {¶ 14} Upton, though, argues that the police did not have a basis for entering the house because they had been informed that the suspects had fled. We find no merit in this argument. Upton and Biddle were both agitated and incoherent when the police arrived, and the officers were not required to accept their word that the suspects had fled. The officers had little time to reflect on the veracity or reliability of Upton and Biddle and reasonably chose to investigate the possible danger.
 {¶ 15} Next, Upton argues that the situation did not require immediate action, as evidenced by the officers' decision to wait for a supervisor to authorize the entry. Once again, this argument is not persuasive. The record reflects that the supervisor authorized the entry not long after the other officers had arrived on the scene, and that Upton and Biddle had required immediate attention during the brief delay.
 {¶ 16} Upton also contends that the officers did not have probable cause to believe that he had committed a crime and that the exigent-circumstances exception was therefore inapplicable.
 {¶ 17} While it is true that the exigent-circumstances exception requires the state to demonstrate probable cause,[7] there was no deficiency of evidence in this case. There was ample evidence to indicate that a crime had occurred in the residence, and the circumstances were such that the officers could not have immediately determined whether Upton was simply a victim or had also committed a crime. The officers possessed probable cause to enter the residence, and their investigation did not go beyond what was necessary to determine that no suspects or victims remained in the house.
 {¶ 18} Finally, Upton notes that a defense witness had testified at the hearing on the motion that the officers had performed a thorough search of the house before the warrant was issued. That witness testified that he had looked through a window of the house within minutes of the shooting and had seen the officers search drawers and other places that could not have harbored suspects or victims. But it was within the province of the trial court to reject the testimony of the witness, who was Upton's cousin. The first assignment of error is overruled.
 Sufficiency and Weight of the Evidence {¶ 19} In the second and third assignments of error, Upton contends that his convictions were based on insufficient evidence and were against the manifest weight of the evidence. Specifically, he argues that the state failed to prove that he had knowingly possessed the contraband. We address the assignments together.
 {¶ 20} In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8] To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[9]
 {¶ 21} Possession may be either actual or constructive.[10] As the Supreme Court of Ohio has stated, "[c]onstructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be in his immediate physical possession."[11] Circumstantial evidence is sufficient to establish constructive possession.[12]
 {¶ 22} Here, there was ample evidence to establish that Upton had knowingly possessed the contraband. Upton admitted that he was the only permanent resident of the house and that Biddle had only stayed there from time to time. The only personal effects, such as identification, personal papers, and clothing, belonged to Upton.
 {¶ 23} Although Upton argues that no forensic evidence linked him to the drugs and paraphernalia, the absence of proof in that regard did not render the guilty verdicts erroneous. And Upton's argument that he had not been in the residence for an extended period of time before the night of the shooting was not supported by any competent evidence.
 {¶ 24} Upton also notes that his mother had a prescription for oxycodone and that her prescription bottle had been recovered from the house. But the officers did not recover the pills from the prescription bottle, which contained marijuana and cocaine. And because more than seventy pills were found in a house containing what the officers termed a large-scale drug-trafficking operation, the jury could have reasonably concluded that Upton had possessed the drugs for illicit purposes. The second and third assignments of error are overruled.
 Sentencing {¶ 25} In the fourth and final assignment of error, Upton challenges the trial court's imposition of the prison terms.
 {¶ 26} He first argues that the trial court erred in not sentencing him to a term of community control. Under R.C.2925.03(C)(1), the trial court was required to impose a prison sentence for both of the second-degree felonies. Accordingly, a term of community control would not have been appropriate, and Upton's argument is without merit.
 {¶ 27} Upton next contends that, because he had not served a prior prison sentence, the trial court erred in imposing more than the minimum sentences for each of the offenses except the fifth-degree felonies, for which the trial court did impose the minimum.
 {¶ 28} The trial court imposed more than the minimum sentence based on its finding under R.C. 2929.14(B)(2) that the minimum term would "demean the seriousness of the offender's conduct or [would] not adequately protect the public from future crime by the offender or others."
 {¶ 29} While this appeal was pending, though, the Supreme Court of Ohio held, in State v. Foster[13] that R.C.2929.14(B) is unconstitutional in that it permits the trial court to impose more than the minimum sentence only after the court has made findings of fact not proved to a jury beyond a reasonable doubt or admitted by the defendant.[14]
 {¶ 30} But the Foster court held that the unconstitutional provisions could be severed and that, after severance, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."[15]
 {¶ 31} In this case, because the imposition of more than the minimum sentences for the felonies of the second and third degrees was based on an unconstitutional statute, we hereby vacate those sentences and remand the cause for resentencing in light of Foster.[16] Because the sentences for the fifth-degree felonies did not include unconstitutional enhancements, we affirm those sentences.[17] But we emphasize that, for the remaining offenses, the trial court may impose any sentence within the applicable statutory ranges. The fourth assignment of error is overruled in part and sustained in part.
 Conclusion {¶ 32} The first, second, and third assignments are overruled. The fourth assignment of error is overruled in part and sustained in part. The judgment of the trial court is affirmed in part and reversed in part, and the sentences for the third-degree felonies and the fourth-degree felonies are vacated. The cause is remanded for resentencing.
Judgment accordingly.
Doan and Painter, JJ., concur.
[1] State v. Sanders, 1st Dist. No. C-030846, 2004-Ohio-6842, at ¶ 6, citing State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.
[2] Id.
[3] State v. Brewster, 1st Dist. Nos. C-030024 and C-030025,2004-Ohio-2993, at ¶ 19, jurisdictional motion overruled,103 Ohio St.3d 1480, 2004-Ohio-5405, 816 N.E.2d 255, citing Hortonv. California (1990), 496 U.S. 128, 110 S.Ct. 2301, and Statev. Willoughby (1992), 81 Ohio App.3d 562, 567, 611 N.E.2d 937.
[4] See State v. Martin, 1st Dist. No. C-040150,2004-Ohio-6433, at ¶ 20.
[5] United States v. Almonte (C.A.1, 1991), 952 F.2d 20, 22, quoting United States v. Adams (C.A.1, 1980), 621 F.2d 41, 44.
[6] Martin, supra, at ¶ 20, citing Hegarty v. Somerset Cty.
(C.A.1, 1995), 53 F.3d 1367, 1374.
[7] See Martin, supra, at ¶ 19.
[8] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819.
[9] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[10] State v. Kobl (1997), 122 Ohio App.3d 160, 174,701 N.E.2d 420.
[11] State v. Hankerson (1982), 70 Ohio St.2d 87,434 N.E.2d 1362, syllabus.
[12] State v. Murrell, 1st Dist. No. C-020333, 2003-Ohio-2068, at ¶ 18.
[13] State v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856, ___ N.E.2d ___.
[14] Id., paragraph one of the syllabus.
[15] Id., paragraph seven of the syllabus.
[16] Id. at ¶ 104 (resentencing the proper remedy for sentences based upon unconstitutional statutes).
[17] Id. at ¶ 103, fn. 99.