The STATE of Ohio, Appellee,

v.

TAYLOR, Appellant.

[Cite as *State v. Taylor* (2001), 144 Ohio App.3d 255.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 1535.

Decided June 8, 2001.

*Richard M. Howell,* Darke County Prosecuting Attorney, for appellee.

*Jason Aslinger,* for appellant.

FREDERICK N. YOUNG, Judge.

James W. Taylor II is appealing the judgment of the Darke County Common Pleas Court overruling his motion to suppress various statements and physical evidence that would have been used at his trial for aggravated murder.

In early April 2000, multiple reports were made to the police that the entire Taylor family, Lori Taylor, James Taylor, and their son, Dillon, were missing.[1] Lori was last seen early in the morning on April 1, 2000, when she had left work after having an argument with her husband, Taylor. The couple had been having

---

1. In the interest of clarity, Lori Taylor and her son, Dillon, will hereinafter be referred to by their first names.

marital difficulties for the past several weeks and Taylor had been staying with his sister. On the last night she was seen, Lori left work with the intention of picking her son up from Taylor's sister's home. In the early morning hours of April 5, 2000, the Greenville police approached the family's trailer and were able to see through a window the jacket Lori was wearing the day she was last seen. Citing exigent circumstances, the police forcibly entered the Taylor home and found Lori's deceased body in the bathtub. After quickly checking to see if any other members of the family were injured in the home, the police left the home, secured it, and obtained a search warrant.

Subsequently, Taylor and Dillon were found in Las Vegas, Nevada. The police flew to Nevada, where Taylor was arrested and interrogated. While in Nevada, a detective from the Darke County Sheriff's Office questioned Taylor. According to Taylor, he asked the detective, "Do I need an attorney?", and the detective responded, "We will take care of that when we get back to Ohio." However, the detective testified that Taylor never said anything about wanting to consult with an attorney prior to or during the questioning.

Upon returning to Ohio, Taylor was indicted on one count of aggravated murder for the death of his wife, Lori. Initially, Taylor pled not guilty and, in the alternative, not guilty by reason of insanity. The trial court ordered a mental evaluation, in which it was determined that Taylor was competent to stand trial and that Taylor was not insane at the time of the commission of the alleged offense. Taylor then filed a motion to suppress various statements and physical evidence from the trial. First, Taylor argued that exigent circumstances did not exist meriting a warrantless search of the trailer. Second, Taylor argued that he was denied his right to counsel by misleading *Miranda* warnings and police statements about when he was entitled to a lawyer. The trial court held a hearing on Taylor's motion and subsequently overruled it. After the trial court's rulings on these motions, Taylor entered a plea of no contest to the amended charge of murder, of which the trial court found him guilty and sentenced him to a prison term of fifteen years to life. Taylor filed this timely appeal.

Taylor raises three assignments of error:

"1. The trial court erred in ruling that the state's warrantless entry of appellant's home was properly justified by exigent or emergency circumstances.

"2. The trial court erred in finding that appellant had not properly invoked his Sixth Amendment right to counsel prior to his questioning on April 6 and April 7, 2000, by the Darke County Sheriff's Department.

"3. The trial court erred in finding that appellant was properly explained his *Miranda* rights prior to his questioning on April 6 and April 7, 2000."

*Appellant's first assignment of error*

Taylor argues that the detectives who searched the trailer could not have reasonably considered the situation an emergency meriting the forcible entry into the trailer without a warrant. We disagree.

Entry and search by the state without a warrant is permissible under the exigent circumstances exception, which applies when police have a reasonable basis to believe that someone inside the premises needs immediate aid. *Parma v. Jackson* (1989), 58 Ohio App.3d 17, 568 N.E.2d 702; *State v. Willoughby* (1992), 81 Ohio App.3d 562, 611 N.E.2d 937, appeal dismissed (1992), 65 Ohio St.3d 1463, 602 N.E.2d 1171. Police officers have a duty to enter premises and investigate where they have a reasonable basis to believe that an emergency exists. *State v. Hyde* (1971), 26 Ohio App.2d 32, 55 O.O.2d 52, 268 N.E.2d 820; *State v. Applegate* (1994), 68 Ohio St.3d 348, 626 N.E.2d 942. To determine whether the police officers had a reasonable belief, the court must weigh the facts and circumstances known to the officers. *State v. Robinson* (1995), 103 Ohio App.3d 490, 659 N.E.2d 1292.

In the instant case, Taylor argues that the facts and circumstances known to the police at the time they forcibly entered the Taylors' trailer did not amount to an emergency necessitating a warrantless entry. Taylor asserts that without the knowledge of Lori's deceased body in the trailer the police could not have obtained a warrant and seized items from the trailer. Thus, Taylor argues that the seized items should be suppressed as fruit from the poisonous tree—the warrantless search. At the time of the warrantless entry, the facts known to the officers were the following. The relationship between Taylor and Lori had been estranged for the past two weeks and he had a history of domestic violence towards Lori. The entire Taylor family had been reported missing for several days. In the early morning hours of April 1, 2000, after arguing on the phone with Taylor, Lori was last seen driving to Taylor's sister's home, where Taylor was watching Dillon. Blood was later found at this address. Lori had not reported to work for days and the police could see through a window in her trailer her jacket, which she was wearing the last day she was seen. The detective testified that based on his fifteen years of experience he felt that Lori or her son may have been in the trailer injured and unable to call for assistance. Thus, he felt that an emergency existed creating a need to enter the trailer to determine the safety of the occupants. We agree.

Lori and her son had been missing for over three days and the facts restated above create a reasonable basis to believe that either she or her son was injured inside the trailer. Upon entering the home, the officers conducted only a limited search for occupants. Therefore, we determine that the police performed only a prudent search for possibly injured people, which was necessary to attempt to preserve or protect the life of Lori or Dillon. Thus, the warrantless search of the

premises was lawful and similarly the items seized in a subsequent search of the trailer with a warrant were legitimately obtained. We find no error in the trial court's decision overruling Taylor's motion to suppress the items seized from the trailer and the first assignment of error is without merit and overruled.

*Appellant's second assignment of error*

■ Taylor argues that prior to police questioning he made a statement to the detective regarding an attorney and that the police were improper to continue questioning him without counsel and to make statements to him suggesting that he could not have counsel present. We disagree.

■ The United States Supreme Court has stated that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States* (1994), 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362, 371. In order for the officers to have to cease questioning, a suspect must unambiguously request an attorney. *Id.* The suspect's request must be sufficiently clear that a reasonable police officer under these circumstances would understand that the suspect was requesting an attorney. *Id.* The statement "Do I need an attorney?" has specifically been held to be ambiguous and does not amount to an unequivocal request for an attorney. *State v. Ward* (Dec. 2, 1999), Marion App. No. 9–9–39, unreported, 1999 WL 1080795; see, also, *State v. Chappell* (Nov. 6, 1997), Franklin App. No. 97APA04– 462, unreported, 1997 WL 700020; *State v. Metz* (Apr. 21, 1998), Washington App. No. 96CA48, unreported, 1998 WL 199944.

Taylor argues that his statement was a sufficient invocation of his right to counsel that the officers had to attempt to clarify the ambiguous reference to counsel and cease questioning. Taylor testified that when he was brought into the interrogation room he said, "Do I need an attorney?", and the detective responded, "We will take care of that when we get back to Ohio." The detective denied that any such statement occurred prior to questioning. However, even assuming that Taylor's allegation is true, the statement "Do I need an attorney?" is equivocal and ambiguous, as held in *Ward.* Since Taylor did not unambiguous- ly request an attorney, the law does not require that the police cease questioning. Therefore, the trial court did not err in overruling Taylor's motion to suppress his statements and his second assignment of error is without merit and overruled.

*Appellant's third assignment of error*

■ Taylor argues that he was not properly read his *Miranda* rights and therefore any statements he made during his interrogation should be stricken. We disagree.

The privilege against self-incrimination requires that a suspect be informed prior to questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed to him prior to questioning if he so desires. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Whether a suspect voluntarily, knowingly, and intelligently waived his right to counsel and his right against self-incrimination is measured by the totality-of-the-circumstances standard. *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854, certiorari denied (1989), 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 823, rehearing denied (1989), 490 U.S. 1042, 109 S.Ct. 1946, 104 L.Ed.2d 416. Evidence of a written waiver form signed by the suspect is strong proof that the waiver is valid. *Id.* No rigid rule exists that the warnings repeated to the suspect prior to questioning must be an exact duplicate of the precise language utilized in the *Miranda* opinion. *State v. Dailey* (1990), 53 Ohio St.3d 88, 90, 559 N.E.2d 459, 461–462. On the contrary, the warnings need only be sufficient to apprise the suspect of the rights provided in *Miranda*. *Dailey, supra.*

In the instant case, Taylor signed a written waiver that advised him that he had "a right to talk to a lawyer and have him present with you while you are being questioned" and to have one appointed *"before any questioning."* However, when the detective read the written waiver to Taylor, he advised him only that he had the right to talk to a lawyer and have him present. Taylor argues that the oral omission of "while you are being questioned" and "before any questioning" was misleading and deprived him of counsel. We disagree. The written *Miranda* warnings when they were read were placed in front of Taylor, who stated that he had his GED and thus should be able to read and write. Further, Taylor never told the detectives that he did not understand his *Miranda* rights. At the suppression hearing, Taylor was able to read the *Miranda* warnings on the waiver without difficulty. Considering that the detectives omitted only a small portion of the warnings and that this portion was included on the written form in front of Taylor, which he signed, we cannot conclude that the trial court erred in determining that Taylor was explained his *Miranda* rights in a manner sufficient to apprise him of his rights. Taylor's third assignment of error is without merit and overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF, P.J., and FAIN, J., concur.