OPINION
{¶ 1} Defendant-appellant, Glen Gulley, appeals his conviction and sentence in the Clermont County Court of Common Pleas for burglary and theft.
 {¶ 2} In March 2004, Kevin Blanton was living in an apartment complex on Clough Pike in Union Township, Ohio. Appellant was charged in April 2004 with one count of burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2), and one count of theft, a felony of the fifth degree, in violation of R.C.2913.02(A)(1). The charges stemmed from an incident that occurred on March 12, 2004, wherein appellant allegedly broke into Kevin Blanton's apartment by cutting a hole through the drywall of the apartment complex laundry room, which was adjacent to the apartment, and stole several items, including a credit card. Appellant moved to suppress all identification evidence against him as well as statements he made to a detective during a police interrogation. Following a suppression hearing, the trial court overruled the motion. The case was tried to a jury. On June 7, 2005, the jury found appellant guilty of the lesser included offense of burglary, a felony of the third degree, in violation of R.C. 2911.12(A)(3), and of theft as charged. The trial court sentenced appellant to four years in prison on the burglary count and to 11 months in prison on the theft count, to be served concurrently with each other and consecutively to a prison term imposed in Hamilton County. This appeal follows in which appellant raises five assignments of error.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ALLOWING HIM TO STAND TRIAL WEARING A STUN BELT."
 {¶ 5} Appellant argues the trial court abused its discretion when it failed to hold a hearing regarding the necessity for the stun belt. Appellant also argues that the use of the stun belt at trial violated his constitutional rights to a fair trial. It is undisputed that appellant agreed to wear the belt.
 {¶ 6} The decision to restrain a defendant is committed to the sound discretion of the trial court, who is in the best position to ensure the safety of the proceedings. See State v.Richey (1992), 64 Ohio St.3d 353. While a hearing on the need for restraints is "the preferred and encouraged practice," it is not mandatory. See State v. Franklin, 97 Ohio St.3d 1,2002-Ohio-5304.
 {¶ 7} In the case at bar, the trial court did not hold a formal hearing regarding the need for the stun belt. However, once it was made aware of allegations of security problems (based on the fact that the stun belt was loose), and before the jury array was brought in, the trial court did question Richard Corder, a Clermont County deputy sheriff and the "supervisor for the court security division," under oath. The officer testified that because a trial is typically a critical emotional time for a defendant, officers use restraints to have some control over the defendant should something go wrong. The officer testified that he did not have any specific indications that appellant was a security risk, and that the use of restraints was a standard procedure in courts. The trial court then told appellant that he could wear the stun belt underneath his clothing if he wanted. At that point, a witness whose name was not provided, stated: "It has already been reported to me this morning that [appellant] has already tampered with the [stun] belt." Appellant's attorney then stated: "Your Honor, Mr. Gulley does not object to the belt, so why don't we go forward." We find no abuse of discretion in the trial court's decision to briefly question the officer, rather than hold a hearing.
 {¶ 8} Placing restraints on a criminal defendant violates the Sixth Amendment if the restraints impede the defendant's ability to confer with counsel or to assist in his defense.State v. Fitzpatrick, Hamilton App. No. C-030804, 2004-Ohio-5615, ¶ 16. Likewise, the use of restraints infringes upon the presumption of innocence if the restraints can be said to have affected how the defendant was perceived by those charged with determining his guilt. Id. On appeal, appellant merely asserts that the use of restraints "upon a criminal defendantmay * * * affect the jury's perception of the defendant, andmay thus infringe upon the presumption of innocence," and "may also impede the defendant's ability * * * to confer with his counsel and to assist in his defense." (Emphasis added). Appellant does not assert, and there is no evidence, that the jury was aware of the stun belt or that the belt was exposed at any time. Nor does appellant argue that he was unable to or impeded from conferring with his counsel and/or assist in his defense simply because he was wearing a stun belt.
 {¶ 9} In light of the foregoing, we find that appellant failed to establish that the use of a stun belt during trial infringed upon his constitutional rights to be present at trial or to participate in his defense. Appellant's first assignment of error is accordingly overruled. See State v. McKnight,107 Ohio St.3d 101, 2005-Ohio-6046 (even though jury saw appellant handcuffed on one occasion, appellant has failed to demonstrate prejudice).
 {¶ 10} Assignment of Error No. 2:
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FAILING TO ENSURE THAT THERE WAS AT LEAST A REPRESENTATIVE SAMPLE OF AFRICAN-AMERICANS IN THE SELECTED JURY POOL."
 {¶ 12} Appellant argues that the trial court erred by failing to ensure there was a representative mix of races in the jury array. Appellant also argues that his Sixth Amendment right was violated when he was tried before a jury without at least one African-American juror. It is undisputed that although appellant is African-American, the jury array was composed of only Caucasians. The parties filed the following stipulations with this court: "the County Jury Information sheets do not elicit racial information; all of the potential jurors who appeared in response to the call for jury duty on June 6, 2005, were Caucasian; all of the persons seated as jurors and alternates were Caucasian." In his brief, appellant noted that he does not claim that racist jury selection occurred. Appellant admits he never challenged or objected to the jury array.
 {¶ 13} Crim.R. 24(F) provides that a prosecutor or a defense attorney "may challenge the array of petit jurors on the ground that it was not selected, drawn or summoned in accordance with law." However, such a challenge must "be made before the examination of the jurors" on voir dire. Id.; State v. Bradley
(Aug. 24, 1998), Clermont App. No. CA97-10-086, at 8. Although appellant's attorney briefly commented during voir dire that "as you can see, Mr. Gulley is African-American. * * * Nobody on the [jury] panel is[,]" appellant never challenged the jury array. "Having failed to timely raise his challenge to the array pursuant to the dictates of Crim.R. 24[F], we find that appellant has effectively waived this right." Id. Nevertheless, because appellant also framed his assignment of error under the tenets of a constitutional violation, we proceed to address his contentions in turn. Id. at 9.
 {¶ 14} The "selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial." Taylor v. Louisiana
(1975), 419 U.S. 522, 528, 95 S.Ct. 692. Thus, "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community." Id. at 538. However, there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population," nor is there any right to "a jury of any particular composition." Id. "The Sixth Amendment guarantees only the opportunity for a representative jury, not a representative jury itself. * * * The focus, therefore, is properly placed on the procedure of selecting juries, not on the outcome of that process." Phillipsv. Value City Stores, Inc. (Sept. 16, 1997), Franklin App. No. 96APE12-1711, 1997 WL 578950, at *6. Ohio's statutory scheme for the selection of jurors is based upon the principle that qualified jurors will be selected in a random manner. See R.C. Chapter 2313.
 {¶ 15} Four years after the Taylor decision, the United States Supreme Court established a three-part test to demonstrate a prima facie violation of the fair cross-section requirement: (1) the defendant must show that the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and (3) the under-representation is due to systematic exclusion of the group in the jury selection process. Duren v.Mississippi (1979), 439 U.S. 357, 364, 99 S.Ct. 664. In 1991, the Ohio Supreme Court adopted this test in State v. Fulton
(1991), 57 Ohio St.3d 120.
 {¶ 16} In the case at bar, while appellant easily establishes the first prong of the Duren/Fulton test (as African-Americans have long been considered a "distinctive" group), appellant fails to establish the second and third prongs. Appellant offers no evidence that (1) African-Americans are unfairly and unreasonably represented in relation to the number of such persons in Clermont County, and (2) such under-representation is due to the systematic exclusion of African-Americans from the jury selection process. Bradley at 11. There is no allegation that the jury array was not randomly chosen. Appellant does not allege that racist jury selection occurred. The parties stipulated that the Clermont County Jury Information sheets do not elicit racial information, and that all of the potential jurors who appeared in response to the call for jury duty on June 6, 2005, were Caucasian. Appellant failed to establish a prima facie case that his constitutional rights were violated by a jury that was not fairly or impartially drawn from Clermont County's venire. SeeBradley. Appellant's second assignment of error is accordingly overruled.
 {¶ 17} Assignment of Error No. 3:
 {¶ 18} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN THE EXCESSIVE SENTENCE THAT WAS ORDERED."
 {¶ 19} Appellant was sentenced to prison on the theft charge, a felony of the fifth degree, rather than community control, was sentenced to nonminimum concurrent prison terms on both the burglary and theft charges, and was ordered to serve those sentences consecutively to a prison term imposed in Hamilton County. Appellant challenges the trial court's failure to sentence him to community control under R.C. 2929.13(B) on the theft charge, and the nonminimum and consecutive sentences. Appellant claims that the rule enunciated in Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, applies to him. After deciphering the poorly written analysis under this assignment of error, it appears that appellant claims his nonminimum consecutive sentences and the trial court's failure to sentence him to community control violated Blakely.
 {¶ 20} Appellant first argues that the trial court abused its discretion by failing to order community control under R.C.2929.13(B) on the theft charge. He also argues that his sentence on the theft charge violated Blakely.
 {¶ 21} R.C. 2929.13(B) governs the sentencing of an offender who commits a fourth or fifth-degree felony. Under R.C.2929.13(B), the trial court is first required to determine whether any of the factors enumerated in R.C. 2929.13(B)(1) are applicable. If the court finds that at least one of the factors is applicable, the court then reviews whether a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11. See R.C. 2929.13(B)(2)(a). In doing so, the trial court is guided by the pertinent seriousness and recidivism factors enumerated in R.C. 2929.12. If the trial court finds after this review that (1) the offender is not amenable to community control, and (2) a prison term is consistent with R.C.2929.11 purposes and principles of felony sentencing, the court is required to impose a prison term. R.C. 2929.13(B)(2)(a).
 {¶ 22} Contrary to appellant's assertion, the trial court's failure to sentence him to community control does not violateBlakely. In State v. Foster, ___ Ohio St.3d ___,2006-Ohio-856, the Ohio Supreme Court held that R.C.2929.13(B)(2)(a) and (b) "do not violate Blakely by requiring the sentencing court to make additional findings of fact before increasing a penalty at the fourth or fifth degree felony level." Id. at ¶ 70. The supreme court noted that although a trial court has no discretion but must impose a prison term if the appropriate findings are made, the statute does not prevent a trial court from imposing a prison term without these findings. Id. at ¶ 69.
 {¶ 23} In the case at bar, the trial court found, on the record at the sentencing hearing and in its sentencing entry, that (1) at least one of the R.C. 2929.13(B)(1) factors was applicable, to wit, appellant had previously served a prison sentence, (2) a prison term was consistent with the purposes and principles of sentencing under R.C. 2929.11, and (3) appellant was not amenable to community control. Having so found, the trial court was required to impose a prison term on the theft charge. The judgment sentencing appellant to prison rather than community control for theft is accordingly affirmed.
 {¶ 24} Appellant also argues that the imposition of nonminimum and consecutive prison terms violated Blakely. In light of the supreme court's decision in Foster, we agree.Foster at paragraphs one and three of the syllabus. We therefore vacate the decision of the trial court sentencing appellant to nonminimum prison terms for burglary and theft and remand those sentences for a new sentencing hearing consistent with Foster. See State v. Hooks, Butler App. Nos. CA2004-02-047, CA2004-02-050, and CA2004-02-051, 2006-Ohio-1272;State v. Sizemore, Butler App. No. CA2005-01-022,2006-Ohio-1433. Likewise, we vacate the decision of the trial court ordering that appellant's sentences for theft and burglary be served consecutively to a prison term imposed in Hamilton County and remand them for a new sentencing hearing consistent with Foster. See Hooks; State v. Smathers, Ashland App. No. 05-COA-019, 2006-Ohio-1574. Appellant's third assignment is accordingly sustained in part and overruled in part.
 {¶ 25} Assignment of Error No. 4:
 {¶ 26} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN THE APPOINTMENT OF TRIAL COUNSEL."
 {¶ 27} Appellant argues that his trial counsel was ineffective and that her "conduct fell below an acceptable standard of care to be exercised by a competent defense attorney," under Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. Appellant does not bother telling us when, where, why, and/or how his trial counsel was ineffective.
 {¶ 28} App.R. 16(A)(7) requires an appellant's brief to contain "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Thus, an appellant must indicate to the appellate court specifically where the alleged errors may be located in the record. State v. Howard, Warren App. No. CA83-07-048, 2002-Ohio-3983, ¶ 21. This court may disregard an assignment of error if a party fails to identify in the record the error on which the assignment of error is based as required by App.R. 16(A). Id. at ¶ 22; App.R. 12(A)(2). "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." Id., citing Statev. Watson (1998), 126 Ohio App.3d 316. "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." Id. Appellant's fourth assignment of error is accordingly overruled.
 {¶ 29} Assignment of Error No. 5:
 {¶ 30} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS."
 {¶ 31} As he alleged in his motion to suppress, appellant argues that his Miranda rights were violated when the detective interrogating him failed to stop questioning him once appellant "clearly state[d], at several points during his interrogation, of his need to secure a lawyer."
 {¶ 32} The record shows that before interrogating appellant, the detective informed him of his Miranda rights, and that appellant signed a written waiver of those rights. During the interrogation, appellant made the following two statements with regard to a request for an attorney: "I've got to get me an attorney and I've got to prove that I was, first of all I'll proved [sic] that I wasn't in Clermont County[,]" and "Well, you know, I'll get an attorney, possibly (inaudible) or whatever. And you know, I'll prove at a hearing that Glenn Gulley ain't been [sic] to no Clermont County."
 {¶ 33} If a suspect in a criminal investigation invokes his right to counsel at any time during a custodial interrogation, the police must cease all questioning until a lawyer has been made available or until the suspect reinitiates the conversation.Edwards v. Arizona (1981), 451 U.S. 477, 484-485,101 S.Ct. 1880. However, the request for an attorney must be clear and unambiguous.
 {¶ 34} "[If] a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspectmight be invoking the right to counsel, our precedents do not require the cessation of questioning. * * * Rather, the suspect must unambiguously request counsel. * * * Although a suspect need not `speak with the discrimination of an Oxford don,' * * * he must articulate his desire to have counsel present sufficiently clear that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards
does not require that the officer stop questioning the suspect."Davis v. United States (1994), 512 U.S. 452, 459,114 S.Ct. 2350 (emphasis sic); State v. Jackson, 107 Ohio St.3d 300,2006-Ohio-1.
 {¶ 35} Upon reviewing appellant's questioning, we find that his alleged requests for an attorney concerned appointment of counsel for future court hearing and proceedings. Appellant did not ask to consult with an attorney before answering questions, and did not ask for an attorney to be present during questioning. Pursuant to the holding in Jackson, we find that the statements "I've got to get me an attorney" and "Well, you know, I'll get an attorney" did not amount to a clear, unambiguous, or unequivocal invocation of the right to counsel. Therefore, the trial court did not err when it overruled the motion to suppress on that basis. Appellant's fifth assignment of error is overruled. SeeState v. Dunlap, 73 Ohio St.3d 308, 1995-Ohio-243.
 {¶ 36} Judgment affirmed in part, reversed in part, and remanded.
Powell, P.J., and Bressler, J., concur.