[Cite as *State v. O'Leary*, 2013-Ohio-5670.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-01-009 |
| - vs - | : | O P I N I O N<br>12/23/2013 |
| | : | |
| BRIAN O'LEARY, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2012-08-1367

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Charles M. Conliff, P.O. Box 18424, Fairfield, Ohio 45018-0424, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Brian A. O'Leary, appeals his convictions for rape and attempted disseminating matter harmful to juveniles from the Butler County Court of Common Pleas.

{¶ 2} On July 30, 2012, O'Leary was brought to the Middletown Police Department by his parole officer, Jane Fisher. Detective Janice Jones conducted two separate interviews with O'Leary at the police department. Det. Jones read O'Leary his *Miranda* rights prior to

the first interview. That interview lasted approximately 30 minutes. Det. Jones terminated the interview and left the room after O'Leary stated, "I need an attorney," and indicated that he no longer wanted to talk.

{¶ 3} Shortly thereafter, Det. McIntosh messaged Det. Jones to inform her that O'Leary wished to speak with her again. After Det. Jones re-entered the interview room, O'Leary asked her how quickly he could be moved to the Butler County Jail if he made a statement. Det. Jones informed O'Leary that he had not been charged with a crime and indicated that the decision would be left to the parole officer who had brought him in. However, she stated that she did not have a problem with O'Leary being moved to the county jail if they would take him. O'Leary redirected his question to P.O. Fisher, who told him that he could be moved to the county jail.

{¶ 4} Det. Jones again read O'Leary his *Miranda* rights, and he again waived those rights. O'Leary then admitted that he had vaginal intercourse with the minor victim five to ten times and had sent her a nude picture of himself.

{¶ 5} O'Leary was indicted on five counts of rape in violation of R.C. 2907.02(A)(1)(b), first-degree felonies involving a minor who was less than 13 years of age, and one count of attempted disseminating matter harmful to juveniles in violation of R.C. 2923.02(A) and 2907.31(A)(1), a first-degree misdemeanor.

{¶ 6} O'Leary sought to suppress the statements he made to Det. Jones on the basis that he was further interrogated after having requested counsel. Following a hearing, the trial court denied the motion. O'Leary also sought to have the grand jury testimony of the victim released, arguing that it was inconsistent with a statement she made to a social worker. That motion was also denied.

{¶ 7} On January 14, 2013, O'Leary pled no contest to the charges as indicted. He was sentenced shortly thereafter.

{¶ 8} O'Leary now appeals his convictions, raising two assignments of error for our review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF [O'LEARY] BY OVERRULING HIS MOTION TO SUPPRESS EVIDENCE.

{¶ 11} Within this assignment of error, O'Leary argues that the "trial court erred in admitting [his] statements, obtained in violation of his Federal and State Constitutional rights against self-incrimination." Specifically, O'Leary asserts that the trial court erred in denying his motion to suppress any statements made after he had invoked his right to counsel.

{¶ 12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 13} When a suspect in custody expresses "his desire to deal with the police only through counsel," the suspect "is not subject to further interrogation by the authorities until counsel has been made available to him." *State v. Voss*, 12th Dist. Warren No. CA2006-11-132, 2008-Ohio-3889, ¶ 65, citing *Edwards v. Arizona*, 451 U.S. 477, 485-485, 101 S.Ct. 1880 (1981). To invoke the right to have an attorney present during interrogation, a suspect must unambiguously request counsel such that a reasonable officer in the circumstances

- 3 -

could understand the statement to be a request for an attorney. *Voss* at ¶ 66, quoting *Davis v. United States*, 512 U.S. 452, 459, 101 S.Ct. 2350 (1994). However, if the statement is not clear that the person is requesting an attorney, then the officers are not required to stop questioning the suspect. *Id.* Statements such as "I think I need a lawyer" have been found not to be an unambiguous and unequivocal request for an attorney. *See, e.g., Voss* at ¶ 69; *State v. Henness*, 79 Ohio St.3d 53, 63 (1997).

### *First Interview*

{¶ 14} O'Leary first argues that he requested counsel numerous times during the first interview with Det. Jones before that interview was finally terminated. At the 11:18 mark of the interview, O'Leary stated, "if that's what this is about, I've, I've gotta shut down, because I can't, I can't answer questions with that without an attorney." O'Leary was referencing a prior investigation conducted by his former parole officer. Det. Jones then indicated to O'Leary that her interview with him was not related to any prior investigations involving his former parole officer.

{¶ 15} Det. Jones then told O'Leary that there were allegations of inappropriate behavior between him and a minor. She stated that she needed to ask him about it because she only had one side of the story. O'Leary told her that because he was on parole and a sex offender, he "can't answer those questions without an attorney present." However, O'Leary continued to speak without being questioned. Eventually, O'Leary asked Det. Jones if she needed to ask him more questions, stating that, "I'll do my best to answer them." Det. Jones then asked O'Leary if he was willing to answer more questions. In so doing, she expressed concern that she did not want to violate his rights. O'Leary again told Det. Jones that, "if you want to ask me questions I'll do my best to answer them, but if it gets too close I have to shut down. I have to get an attorney."

{¶ 16} O'Leary argues that these statements were unambiguous requests for counsel.

- 4 -

We disagree. O'Leary's first mention of counsel was a qualified request for counsel, "if that's what this is about." The issue O'Leary was referring to, a prior investigation by a former parole officer, was not the subject of the interview with Det. Jones. Therefore, there was no unambiguous request for counsel based on that statement. O'Leary's second "request" for counsel was directly related to the questions being asked by Det. Jones, whereby O'Leary stated that he "can't answer those questions without an attorney present." However, O'Leary continued to speak of his own volition and expressed a desire to know specifically what the interview was about. Without being asked any further questions, O'Leary voluntary offered to continue answering questions. He again made a qualified "request" for an attorney, stating that "if it gets too close I have to shut down. I have to get an attorney." Once again, this "request" was not an unequivocal and unambiguous request for an attorney. While he states that he can't answer certain questions without an attorney, he makes this request ambiguous and equivocal by continuing to speak and expressing a willingness to continue answering more questions. His qualified "request" for an attorney further illustrates that he was not making a present, unambiguous and unequivocal request for counsel, but rather was setting a red line that would cause him to invoke his right to counsel in the future.

{¶ 17} The first interview concluded when O'Leary unequivocally and unambiguously requested counsel, stating, "ok, let's just shut it down. * * * I need an attorney."

### *Second Interview*

{¶ 18} The second interview commenced after Det. Jones was contacted by Det. McIntosh to inform her that O'Leary had requested to speak to her again. Det. McIntosh testified that she entered the interview room and asked O'Leary if he needed anything. According to the testimony, O'Leary asked for water and stated that he wished to speak with Det. Jones again. Det. Jones returned to the interview room and confirmed that O'Leary had asked for her. He then asked how quickly he could be moved to the county jail if he made a

statement.

{¶ 19} As stated *supra*, Det. Jones informed O'Leary that he had not been charged with a crime. However, she stated that she did not have a problem with O'Leary being moved to the county jail if they would take him. P.O. Fisher told O'Leary that he would be moved to the county jail.

{¶ 20} At that point, Det. Jones again advised O'Leary of his *Miranda* rights, which O'Leary waived. Det. Jones asked O'Leary if he was making the statement of his own free will, to which he responded affirmatively. Det. Jones further confirmed with O'Leary that she was making no promises in return for his statement. O'Leary gave a statement wherein he admitted that he had vaginal intercourse with the minor victim "more than five, but less than ten times," and had sent her a nude picture of himself.

{¶ 21} O'Leary explained his reasoning for making the confession, stating that "it would've came out eventually anyway," and conveyed an interest in protecting the victim and her mother from having to testify against him at trial. Det. Jones then verified with O'Leary that no one came in and "threatened you or told you you had to tell me something or made a promise that, that you won't be charged or that you won't go to prison?" O'Leary adamantly stated that this had not happened, instead asserting that "sometimes your conscience gets to you. You know what I mean? If you care about the girl, then you would come clean. You know? And the more I thought about it, it's like the more, why would I want to put her through that. It's already happened, it's over with, so let her move on with her life, go through counseling, whatever she needs."

{¶ 22} O'Leary argues that the state did not prove he re-initiated the interview because there is a 22-minute portion of the time he spent in the interview room between the two interviews that was not recorded. He further argues that the state made promises in return for his statement by agreeing to have him moved to the county jail.

{¶ 23} If a suspect in a criminal investigation invokes his right to counsel at any time during a custodial interrogation, the police must cease all questioning until a lawyer has been made available *or until the suspect reinitiates the conversation.* *State v. Gulley*, 12th Dist. Clermont No. CA2005-07-066, 2006-Ohio-2023, citing *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880 (1981). In the present case, the only testimony was that O'Leary specifically asked to speak with Det. Jones again between the first and second interview. While a portion of O'Leary's time spent in the interview room was unrecorded, there is nothing in the record to indicate that he was threatened or coerced during this time. In fact, O'Leary is quite clear in his statement that he was not threatened or promised anything in return for his statement, but rather gave a well-reasoned explanation for his choice to make a confession. Accordingly, we cannot find error in the trial court's denial of the motion to suppress those statements made during the second interview where O'Leary voluntarily reinitiated the conversation.

{¶ 24} We also cannot find error with the trial court's finding that Det. Jones did not make any promises to O'Leary. Det. Jones made clear in the interview that she was not promising anything to O'Leary, and he indicated that he understood that. On the other hand, P.O. Fisher did tell O'Leary that she would move him to the Butler County Jail. "However, a promise made by a police officer is merely one factor to be considered along with other circumstances in determining whether a defendant's statement was voluntary. It does not matter that the accused confessed in response to the promise so long as the promise did not overwhelm his will." *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, ¶ 28 (internal citations omitted). Given the circumstances, we cannot find that P.O. Fisher's promise to have O'Leary held in a different jail overwhelmed his will.

{¶ 25} Finally, O'Leary asserts that some sort of nefarious insinuations should be drawn from the movement of the confession form from one side of the table to a position

directly in front of him during the period which the recording was turned off. Each of the state's witnesses testified that they did not put the confession form in front of O'Leary. The video indicates that nothing had been written on the form until after O'Leary gave his confession and Det. Jones advised him to write it down on said form. Absent any further evidence, we cannot find that an unexplained movement of the form during the unrecorded portion of his time in the interview room indicates that O'Leary's rights were in any way violated.

{¶ 26} In light of the foregoing, having found that there is competent, credible evidence to support he trial court's findings that (1) the first interview was halted upon O'Leary's clear and unambiguous invocation of his right to counsel, and (2) that O'Leary reinitiated contact with Detective Jones and again waived his right to counsel, O'Leary's first assignment of error is overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION REQUESTING GRAND JURY TESTIMONY.

{¶ 29} Within this assignment of error, O'Leary argues that the "trial court erred in failing to conduct an *in camera* review of the victim's grand jury testimony when [O'Leary] stated a particularized need, based on an exculpatory statement the same victim had made to a social worker at a rape kit examination." O'Leary asserts that the victim's statement to a social worker contradicts both her grand jury testimony and written statement made to the police.

{¶ 30} The decision whether to release grand jury testimony is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Coley*, 93 Ohio St.3d 253, 261, 2001-Ohio-1340. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or

unconscionable." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 34; *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 31} First, we address O'Leary's assertion that Crim.R. 16 affords him protections beyond those in Crim.R. 6. To the contrary, Crim.R. 16(J)(2) specifically enumerates that transcripts of grand jury testimony are not subject to disclosure under Crim.R.16, but rather are governed by Crim.R. 6.

{¶ 32} Crim.R. 6(E) provides that,

> [a] prosecuting attorney * * * may disclose matters occurring before the grand jury, other than deliberations of a grand jury or the vote of a grand juror, but may disclose matters only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

{¶ 33} Grand jury proceedings are secret, and a defendant has no right to inspect grand jury transcripts either before or during trial unless the "ends of justice require it and there is a showing by the defense that a particularized need for the disclosure exists which outweighs the need for secrecy." *State v. Greer*, 66 Ohio St.2d 139 (1982), paragraph two of the syllabus. A particularized need is established when the circumstances reveal a probability that "the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Id.* at paragraph three of the syllabus.

{¶ 34} We find that O'Leary's assertions fall short of meeting the burden for grand jury disclosure. While O'Leary alleges that the grand jury testimony may contradict the statement that the victim made to the social worker, he does not argue that the grand jury testimony contradicts the written statement the victim gave to the police. O'Leary already has access to the written statement made to police which he purports is contradictory to the statement the

victim made to a social worker. Therefore, we cannot find that O'Leary demonstrated a particularized need for the disclosure of the grand jury testimony when the allegedly contradictory statement contained therein is readily available in the written statement given to the police.

{¶ 35} Furthermore, the record indicates that the written statement was simply more specific than the statement to the social worker, rather than contradictory. O'Leary is merely speculating that the grand jury testimony would prove contradictory rather than complimentary. When a defendant speculates that grand jury testimony might contain material evidence or might aid his cross-examination by revealing contradictions or inconsistencies, a trial court does not abuse its discretion by finding the defendant has not shown a particularized need. *State v. Leach*, 12th Dist. Clermont No. CA2000-05-033, 2001-Ohio-4203, *State v. Mack*, 73 Ohio St.3d 502, 508 (1995); *State v. Webb*, 70 Ohio St.3d 325, 337 (1994). Accordingly, we cannot find that the trial court abused its discretion in denying O'Leary's motion for release of grand jury testimony.

{¶ 36} In light of the foregoing, having found that O'Leary did not demonstrate a particularized need for disclosure of the grand jury testimony, O'Leary's second assignment of error is overruled.

{¶ 37} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.