[Cite as *State v. Hammett-Marette*, 2019-Ohio-394.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28157 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-2197/1 |
| | : | |
| KHADIJA HAMMETT-MARETTE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of February, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellant

KYLE J. LENNEN, Atty. Reg. No. 0085726, 120 West Second Street, Suite 612, Dayton, Ohio 45402
  Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Pursuant to R.C. 2945.67(A) and Crim.R. 12(K), plaintiff-appellant, the State of Ohio, appeals from an order of the Montgomery County Court of Common Pleas granting defendant-appellee Khadija Hammett-Marzette's motion to suppress.[1]   For the reasons outlined below, the judgment of the trial court will be reversed and the matter will be remanded for further proceedings.

### Facts and Course of Proceedings

{¶ 2} On July 3, 2018, the Montgomery County Grand Jury indicted Hammett-Marzette for one count of having weapons while under disability, one count of carrying a concealed weapon, one count of assault, and one count of resisting arrest.   Following her indictment, Hammett-Marzette pled not guilty to the charges and filed a motion to suppress statements she made during a police interview.   In the motion to suppress, Hammett-Marzette argued for the suppression of her statements on grounds that the interviewing detective continued to interrogate her after she had clearly and unambiguously invoked her right to counsel.

{¶ 3} On September 7, 2018, the trial court held a hearing on the motion to suppress.   At the hearing, the parties agreed that the trial court would base its ruling on its review of two exhibits: an audio recording of the detective's interview of Hammett-

---

[1] This matter was captioned in the trial court as *State v. Hammett-Marette*; however, the record reflects that the defendant-appellee's name is properly spelled Hammett-Marzette. We will use the correct spelling in our Opinion, but retain the trial court's spelling in the caption of the case.   *See* App.R. 3(D) (requiring that, in the notice of appeal, "[t]he title of the case shall be the same as in the trial court").

Marzette and a waiver of rights form.   Those exhibits established the following facts.

{¶ 4} At 11:44 a.m. on June 6, 2018, Detective Shiverdecker of the Montgomery County Sheriff's Office[2] spoke with Hammett-Marzette in an interview room.   The detective began by completing the header area of a pre-interview waiver of rights form. He filled in the date, time, and location of the interview, and he asked Hammett-Marzette for her name, birthdate, and Social Security number, which she provided.   The detective told her that she was being interviewed regarding the offenses of carrying a concealed weapon and having weapons while under disability.   The detective then read to Hammett-Marzette five enumerated paragraphs detailing her *Miranda* rights, and he instructed her to initial next to each sentence if she understood them.   Hammett-Marzette initialed each paragraph.

{¶ 5} Detective Shiverdecker asked Hammett-Marzette how many years of schooling she had, to which she responded 11 years.   He then asked her to read aloud the "waiver of rights" paragraph that followed.   The paragraph read:

> The above statement of rights has been read to me.   I understand what my rights are.   I am willing to make a statement and answer questions.   I do not want a lawyer at this time.   I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

State's Exhibit 1.

---

[2] The detective did not identify himself on the audio recording, however he signed the waiver of rights form with his name and officer number.   The Vandalia Municipal Court record, which is part of the trial court's record, reflects that the investigating officer was Detective Shiverdecker.

{¶ 6} When Hammett-Marzette reached the sentence regarding her not wanting a lawyer, the following exchange occurred:

Hammett-Marzette: I do not want a lawyer, what?

Det. Shiverdecker: Right, at this time.

Hammett-Marzette: Why shouldn't I have a lawyer at this time?

Det. Shiverdecker: Well, cause --

Hammett-Marzette: I want some advice; I want to get up out of here, sir. I swear, I --

Det. Shiverdecker: Alright, well, are you saying you want to talk to a lawyer first?

Hammett-Marzette: I don't -- what is the best thing I should do?

Det. Shiverdecker: I can't advise you on that either way. I can't sit here and tell you it's going to be best to talk to me. I can't sit here and tell you it's going to be worse if you talk to me.

Hammett-Marzette: Right.

Det. Shiverdecker: Alright. I cannot give you that advice. All I can do is I can advise you of what your rights are. And then it's up to you on whether you want to talk to me without a lawyer present.

Hammett-Marzette: Okay.

Det. Shiverdecker: Whether you talk to me now or don't talk to me…

Hammett-Marzette: I want to talk to you.

Det. Shiverdecker:   It holds -- Well, then you have to get through this.

Hammett-Marzette:  Okay.   So, should I sign it?

Det. Shiverdecker:   Well, you have to read it.

Hammett-Marzette:  Okay.

State's Exhibit 2.

{¶ 7} After the foregoing discussion, Hammett-Marzette finished reading the "waiver of rights" paragraph aloud.   Detective Shiverdecker then reread the last sentence and made sure that Hammett-Marzette understood the meaning of "coercion."   Hammett-Marzette subsequently signed the form and proceeded to make statements to Shiverdecker.

{¶ 8} After reviewing the evidence submitted by the parties, the trial court granted Hammett-Marzette's motion to suppress.   In granting the motion, the trial court stated the following:

On June 6, 2018 the Defendant, with an 11th grade education, met in an interview room with a Detective for the purpose of an interrogation. The Detective went over State's Exhibit 1 with the Defendant, a Pre-Interview Form.   Towards the bottom of Exhibit One there is a section entitled: "Waiver of Rights".   Within that section contains the sentence "I do not want a lawyer at this time."   When the Defendant read this statement aloud as instructed by the De[t]ective, [s]he stopped reading and stated: "Why shouldn't I have a lawyer at this time? I want some advice…."   While the first sentence/question could be construed to not be a clear and unambiguous request for an attorney, the statement immediately following

clarifies: "I want some advice…." This Court is aware of the pressures attendant to interrogations and notes holdings requiring a request for an attorney to be "scrupulously honored[.]" *Michigan v. Mosley*, 423 U.S. 96, 326.

This Court finds and holds that the Defendant's request for advice immediately after questioning why [s]he shouldn't have a lawyer "now" is tantamount to a request for an attorney and thus [s]he invoked [her] right to counsel. *State v. Myers*, [2d Dist. Darke No. 1643,] 2006-Ohio-1604. Accordingly, all statements made thereafter are Suppressed. Motion Sustained.

Decision, Entry and Order Sustaining Defendant's Motion to Suppress (Oct. 1, 2018), Montgomery County Court of Common Pleas Case No. 2018-CR-2197/1, Docket No. 30, p. 1-2.

{¶ 9} The State now appeals from the trial court's order granting Hammett-Marzette's motion to suppress, raising a single assignment of error for review.

**Assignment of Error**

{¶ 10} Under its sole assignment of error, the State challenges the trial court's order sustaining Hammett-Marzette's motion to suppress. Specifically, the State claims the trial court erroneously determined that Hammett-Marzette clearly and unambiguously invoked her right to counsel during the interview with Detective Shiverdecker. We agree.

{¶ 11} As a preliminary matter, we note that in ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to

resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id*.

{¶ 12} Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself or herself. To counteract the coercive pressure of custodial interrogations, police officers must warn a suspect, prior to questioning, that he or she has a right to remain silent and a right to the presence of an attorney. *Maryland v. Shatzer*, 559 U.S. 98, 103-104, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010), citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 13} "The opportunity to exercise these rights exists throughout the interrogation, and thus, the interrogation must cease when the defendant exercises his 'right to cut off questioning,' which must be scrupulously honored." *State v. Miller*, 7th Dist. Mahoning No. 13 MA 12, 2014-Ohio-2936, ¶ 41, quoting *Miranda* at 473-474; *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (recognizing that a defendant's right to "cut off questioning" must be "scrupulously honored"). *See also Shatzer* at 104 ("After the warnings are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease. * * * Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present.").

{¶ 14} In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court explained that:

[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. * * * [A]n accused, * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

(Footnote omitted.) *Id.* at 484-485. *Accord State v. Tench*, Ohio Sup. Ct. Slip Opinion No. 2018-Ohio-5205, ___ N.E.3d ___, ¶ 75.

{¶ 15} "Whether a suspect has invoked his right to counsel is an objective inquiry." *State v. Myers*, 2d Dist. Darke No. 1643, 2006-Ohio-1604, ¶ 66, citing *Edwards* at 484-485; *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The request for counsel must be clear and unambiguous, such that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis* at 459; *Tench* at ¶ 76. It is well established that a suspect does not clearly and unambiguously invoke the right to counsel if, in light of the circumstances, a reasonable officer would have understood only that the suspect *might* be invoking that right. *Davis at* 459.

{¶ 16} "In determining whether a reasonable officer conducting the interview would have understood that [the suspect] was asking for an attorney, we may consider what

came before the request, but may not look to [the suspect's] subsequent statements to determine whether the initial request was ambiguous." (Emphasis deleted.) *Tolliver v. Sheets*, 594 F.3d 900, 922 (6th Cir.2010), citing *Smith v. Illinois*, 469 U.S. 91, 97-98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). But, even then, a suspect's alleged invocation must be examined " 'not in isolation but in context.' " *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 37, quoting *State v. Murphy*, 91 Ohio St.3d 516, 520-521, 747 N.E.2d 765 (2001).

**{¶ 17}** "If a suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis* at 461-62; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 18. The officers also have no obligation to ask clarifying questions to ascertain if the suspect is attempting to invoke his right to counsel. *Davis* at 461-462.

**{¶ 18}** The Supreme Court of Ohio has held that neither "I think I need a lawyer" nor "Don't I supposed to have a lawyer present" were unequivocal assertions of the right to counsel. *State v. Henness*, 79 Ohio St.3d 53, 63, 679 N.E.2d 686 (1997); *Brown* at ¶ 19. The Supreme Court also held that "Well, before you use [a Luminol test], can I have a lawyer here?" was an unambiguous request for counsel to be present for the Luminol test, but not an unambiguous invocation of the right to counsel for purposes of defendant's interview with law enforcement. *Cepec* at ¶ 46.

**{¶ 19}** Similarly, this court has held that the statements "Do I need an attorney?" and "Well, can I talk to my lawyer then if there is something wrong like that? Do I need one or something?" did not constitute a clear, unambiguous invocation of the right to counsel. *State v. Taylor*, 144 Ohio App.3d 255, 260, 759 N.E.2d 1281 (2d Dist.2001);

*State v. Knight*, 2d Dist. Clark No. 04-CA-35, 2008-Ohio-4926, ¶ 9 and 112.   *See also In re C.M.R.*, 2018-Ohio-110, 107 N.E.3d 34, ¶ 27 (2d Dist.) (finding no clear, unambiguous invocation of the right to counsel where a mother expressed uncertainty about whether she should retain an attorney).

{¶ 20} As additional examples, the following statements have been found to be ambiguous by other Ohio appellate courts and, thus, insufficient to constitute a clear and unambiguous invocation of the right to counsel:

- "How do I go about getting an attorney when I can't afford one?" and "Should I wait to have counseling before I answer any more?"   *State v. McCune*, 5th Dist. Delaware No. 16 CAC 12 0058, 2017-Ohio-4426, ¶ 17.

- "[I]f you want to ask me questions I'll do my best to answer them, but if it gets too close I have to shut down.   I have to get an attorney."   *State v. O'Leary*, 12th Dist. Butler No. CA2013-01-009, 2013-Ohio-5670, ¶ 15-16.

- "I would prefer a lawyer but I want to talk to you now."   *State v. Carr*, 1st Dist. Hamilton No. C-090109, 2010-Ohio-2764, ¶ 18-20.

- "Can I have a public defender?"   *State v. Curtis*, 10th Dist. Franklin No. 05AP-795, 2006-Ohio-4230, ¶ 14.

- "Can I have an attorney?"   *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, 938 N.E.2d 1060, ¶ 20-21 (9th Dist.).

- "Well, can I have a lawyer present?"   *State v. Foster*, 11th Dist. Trumbull No. 2000-T-0033, 2001 WL 1647177, *9 (Dec. 21, 2001).

{¶ 21} The parties in the instant case focus on this court's holding in *Myers*, 2d Dist. Darke No. 1643, 2006-Ohio-1604, which the trial court cited in support of its decision

granting Hammett-Marzette's motion to suppress. In *Myers*, the defendant was twice interviewed by the police, on two separate dates, following the murder of his father and stepmother. We described the second interview as follows:

Much of the interview involved questions concerning Myers's immediate family; his father's wives; his father's sources of income; Myers's activities on March 26 and 27, 2003; his relationship with his father; and Myers's financial situation. As the interview focused on Myer's financial situation and his father's will, the questioning became more accusatory and [Detective] Burns and [Sergeant] Trissel began to question Myers together, rather than one officer being the primary interrogator. In response to the officers' accusations, Myers stated that he wanted "legal advice." Myers repeated this phrase numerous times when confronted with accusations and when offered a plea agreement in exchange for an admission of criminal conduct. In response to Myers's statements that he wanted legal advice, [Detective Sergeant] Whittaker joined the interrogation in an attempt to clarify whether Myers was asking for an attorney. Whittaker also expressed that the prosecutor was willing not to seek the death penalty if Myers provided a "truthful statement." Whittaker indicated that the offer might not be available after the interview had concluded. When Myers did not expressly state that he wanted an attorney, the prosecuting attorney also joined in the interview to clarify whether Myers wanted counsel. Although Myers did not respond that he wanted an attorney, he repeatedly stated that he wanted "legal advice" but also did not want the death penalty.

The interview concluded at 10:17 p.m., when Myers expressly stated that he wanted an attorney.

*Id.* at ¶ 62.

**{¶ 22}** In ruling on Myers's motion to suppress, the trial court agreed with Myers that his request for "legal advice" was the functional equivalent of a request for an attorney and that he had invoked his right to counsel. *Id.* at ¶ 69. The trial court thus suppressed the statements Myers had made after the initial point at which he had requested legal advice. The trial court also suppressed portions of Myers's statements that were made after the officers' use of the death penalty in an attempt to obtain a prompt confession.

**{¶ 23}** On appeal, Myers claimed, among other things, that the trial court should have suppressed all his statements to the officers due to the interrogation techniques that were employed. In addressing Myers's claim, we focused solely on the officers' conduct in relation to the statements that were not suppressed. We were not asked to review the portions of the trial court's ruling that suppressed certain statements. Accordingly, we did not express whether we agreed with the trial court's ruling on whether Myers invoked his right to counsel. *Myers*, therefore, has limited relevance.

**{¶ 24}** In this case, the audio recording of Detective Shiverdecker's interview with Hammett-Marzette establishes that, while reading the waiver of rights form, Hammett-Marzette became confused by the portion of the form that stated she did not want a lawyer. Specifically, she stated: "I don't want a lawyer? What?" Thereafter, Shiverdecker explained to Hammett-Marzette that the waiver form indicated that she did not want a lawyer "at this time." Still confused, Hammett-Marzette asked Shiverdecker: "Why shouldn't I have a lawyer at this time?" Immediately thereafter, she interrupted

Shiverdecker's attempted response to her question and said "I want some advice; I want to get up out of here, sir."

{¶ 25} When reviewing Hammett-Marzette's request for advice in the context of her preceding statements to Detective Shiverdecker, we do not find that her request amounted to a clear, unambiguous invocation of her right to counsel. The phrase "I want some advice; I want to get up out of here, sir" did not unambiguously convey that Hammett-Marzette wanted to confer with legal counsel before speaking with Shiverdecker. Considered in light of Hammett-Marzette's preceding question, "Why shouldn't I have a lawyer at this time?" a reasonable officer in Shiverdecker's position could have understood Hammett-Marzette's request as one asking for advice on whether she should seek counsel—not as an unambiguous invocation of her right to counsel. At best, a reasonable officer in Shiverdecker's position would have thought that Hammett-Marzette *might* be asking to speak with counsel. This does not satisfy the clear and unambiguous standard set forth in *Davis*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362. Because Hammett-Marzette's request for advice was not a clear, unambiguous request for legal counsel, the trial court erred in granting Hammett-Marzette's motion to suppress on that basis.

{¶ 26} The State's sole assignment of error is sustained.

## Conclusion

{¶ 27} Having sustained the State's sole assignment of error, the judgment of the trial court is reversed and the matter is remanded to the trial court for further proceedings.

. . . . . . . . . . . . .

TUCKER, J., concurs.

FROELICH, J., dissents:

{¶ 28} I agree with the statements of law articulated in the majority opinion, but I would affirm the trial court's conclusion that Hammett-Marzette clearly and unambiguously invoked her constitutional right to counsel.

{¶ 29} Hammett-Marzette raised the issue of counsel while reading the waiver-of-rights paragraph of the pre-interview form.   When she read that she was waiving her right to an attorney at that time, she balked, questioned why she "shouldn't * * * have a lawyer at [that] time" (a question the detective apparently started to answer), and indicated that she "want[ed] some advice" and "to get up out of here."   Hammett-Marzette did not ask the detective if she should get advice; she stated that she wanted advice while discussing her right to an attorney.   In context, Hammett-Marzette was clearly indicating that she wanted the legal advice of an attorney at that time.

{¶ 30} Hammett-Marzette did not repeat her request when the detective asked, "[A]re you saying you want to talk to a lawyer first?"   Instead, she asked the detective what he thought was best for her to do.   In some circumstances, the follow-up discussion may help to clarify a defendant's intentions.   However, a defendant's subsequent failure to repeat a request for counsel cannot defeat a prior clear invocation of the right to counsel.   Given that Hammett-Marzette previously stated, unambiguously, that she did not want to waive her right to counsel at that time and that she wanted legal advice, the interview should have ceased following those statements.

Copies sent to:

Mathias H. Heck
Heather N. Jans
Kyle J. Lennen
Hon. Richard Skelton